William J. O'HARA III, Petitioner–
Appellant,

v.

John T. WIGGINTON;  Wayne Dunn;
Al C. Parke;  and Fred Cowan,
Respondents–Appellees.

No. 93–5737.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 28, 1994.

Decided May 18, 1994.

Frank A. Wichmann (argued and briefed), Wichmann & Schaffer, Erlanger, KY, for petitioner-appellant.

Connie V. Malone (argued and briefed), Office of Gen. Counsel, Laura Early (argued and briefed), Office of Atty. Gen., Frankfort, KY, for respondents-appellees.

Before: KEITH, RYAN, and DAUGHTREY, Circuit Judges.

RYAN, Circuit Judge.

The petitioner, William J. O'Hara III, appeals two orders of the district court dismissing his civil rights complaint, pursuant to 42 U.S.C. § 1983, and denying his petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. This appeal presents the following issues: 1) Whether the petitioner's section 1983 claim arose entirely under state law; 2) whether the petitioner's habeas claim that the state failed to treat his mental illness raised a cognizable issue; and 3) whether the district court erred in denying habeas relief based on the petitioner's ineffective assistance of counsel claim.

We conclude that the district court properly dismissed the petitioner's section 1983 claim because that claim sounded solely in state law. In addition, while a claim that the prosecution breached a plea agreement generally is a cognizable habeas claim, the petitioner identified no such breach here. Finally, the record fails to support the petitioner's ineffective assistance of counsel claim. Accordingly, we affirm the district court's orders.

## I.

In March 1982, the petitioner was indicted in Boone County, Kentucky, Circuit Court, on first-degree rape and sodomy charges, arising out of two separate assaults. The petitioner retained private counsel, who initially entered pleas of not guilty on the petitioner's behalf.

A few weeks prior to the petitioner's trial date, Kentucky legislation providing for a finding of guilty but mentally ill took effect. This statute provided:

> The court shall sentence a defendant found guilty but mentally ill at the time of the offense in the same manner as a defendant found guilty. If the defendant is found mentally ill at the time of sentencing, treatment shall be provided the defendant until he is no longer mentally ill or until expiration of his sentence, whichever occurs first.

Ky.Rev.Stat.Ann. § 504.150 (Baldwin 1982). Pursuant to the newly enacted legislation, the petitioner, allegedly coerced by his father, entered a plea bargain, changing his pleas on the rape charges to guilty but mentally ill (GBMI). In exchange, the state moved to dismiss the two sodomy counts.

Before sentencing the petitioner, the court referred him to Dr. J. Emmanuel Willett, a clinical psychologist who had treated the petitioner off and on following an earlier assault conviction. Willett rendered a formal diagnosis of schizoid personality disorder, pointing out to the court that the petitioner trusted no one, including his lawyer or his parents. Based on Willett's evaluation, the court accepted the petitioner's GBMI pleas, and sentenced the petitioner to two ten-year sentences, to run consecutively.

Following sentencing, the petitioner was assigned to the Kentucky State Reformatory. The adjacent Kentucky Correctional Psychiatric Center provided the petitioner with both inpatient and outpatient treatment from the beginning of his incarceration in August 1982, through July 1985, when prison medical staff determined that further treatment was not needed. In addition, the petitioner declined repeated offers for group treatment through a sex-offender program.

In 1987, the petitioner filed the last of four state petitions seeking post-conviction relief. In this petition, the petitioner sought to vacate his sentence based on the alleged ineffective assistance of his trial counsel and on the state's failure to provide mental treatment. Following a two-day hearing in which the court heard testimony from, *inter alia,* the petitioner, his trial counsel, and the petitioner's father, the court rejected the petitioner's claims. The court specifically found that the petitioner's trial attorney had investigated the charges against the petitioner, adequately, and, under the circumstances, had reasonably recommended the GBMI pleas. The court also found that the petitioner had not demonstrated that his mental treatment failed to comply with Ky.Rev.Stat. Ann. § 504.150. The state's intermediate appellate court affirmed the circuit court's order, and the state supreme court denied discretionary review.

In January 1991, the petitioner filed his civil rights complaint in this case, charging that respondents Corrections Secretary John Wigginton, Corrections Commissioner Wayne Dunn, and Kentucky State Reformatory Warden Al Parke violated the petitioner's federal constitutional rights, pursuant to 42 U.S.C. §§ 1983 and 1988.[1] The petitioner also sought habeas corpus relief on the grounds that his plea was involuntary, that he had received ineffective assistance of counsel, and that he was denied psychiatric treatment allegedly promised in his plea agreement. In February 1993, the district court dismissed the petitioner's section 1983 claim. Shortly thereafter, in April 1993, the district court denied the petitioner habeas corpus relief, finding that the petitioner had waived his claim that his plea was involuntary, and had failed to establish ineffective assistance of counsel. In addition, the court found that the petitioner's contention that he had been denied promised psychiatric treatment failed to state a claim for habeas relief. This timely appeal followed.

---

1. The complaint also named Fred Cowan, Attorney General, Commonwealth of Kentucky, as an individual defendant. However, the complaint nowhere addressed Cowan's individual liability.

## II.

The respondents argue that a plain reading of the petitioner's section 1983 complaint demonstrates that it is based entirely on state law, and thus must be dismissed on Eleventh Amendment grounds. In response, the petitioner contends that the Eleventh Amendment does not bar his claim because, in addition to his interest in having state officials adhere to state law, he also has identified liberty and due process interests protected by the federal Constitution. Specifically, the petitioner claims a due process interest in having his plea bargain enforced, and contends that the Kentucky statute governing GBMI pleas created a constitutionally protected property interest.

Where, as here, the district court dismissed a complaint pursuant to Fed.R.Civ.P. 12(b)(6), we must "examine the complaint in the light most favorable to the plaintiff and assume all material allegations to be true." *Ana Leon T. v. Federal Reserve Bank of Chicago*, 823 F.2d 928, 930 (6th Cir.), *cert. denied*, 484 U.S. 945, 108 S.Ct. 333, 98 L.Ed.2d 360 (1987). "[M]ere conclusions," however, "will not be sufficient to state a civil rights claim." *Id.*

■ It is settled that "a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 121, 104 S.Ct. 900, 919, 79 L.Ed.2d 67 (1984). As the *Pennhurst* Court explained,

A federal court's grant of relief against state officials on the basis of state law ... does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment.

*Id.* at 106, 104 S.Ct. at 911. Accordingly, states and their officials are immune from such suits in federal court, absent the state's unequivocal consent. *Id.* at 99–101, 104 S.Ct. at 907–08.

The petitioner argues that *Pennhurst* does not control here because, in addition to his claim that the respondents did not comply with state law, he has identified federal constitutional claims. First, relying on *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), he argues that he has a constitutional interest in enforcing the terms of his plea agreement.

He also claims that the state statute governing GBMI pleas created an independent due process interest in psychiatric treatment. In support of this claim, the petitioner cites *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989), in which the Supreme Court held that an inmate retains those liberty interests created by state law. *Id.* at 460–61, 109 S.Ct. at 1908–09.

■ We find the petitioner's challenge spurious. It is plain that the petitioner's complaint sought only to conform state officials' conduct to state law. Specifically, the plaintiff alleged in his complaint that he tendered his plea "with the understanding ... that, during his imprisonment, [he] would receive treatment for his aforedescribed mental illness pursuant to K.R.S. 504.150." The plaintiff then set forth the statute in its entirety before concluding that he "has an adjudicated state law entitlement to treatment ... during his imprisonment until he is no longer mentally ill." Accordingly, the essence of the petitioner's claim was that state officials failed to provide psychiatric treatment in conformity with Ky.Rev.Stat.Ann. § 504.150. Because the state did not consent to suit in federal court, the petitioner's claim is barred by the Eleventh Amendment.

■ The petitioner's claim that he identified independent federal constitutional interests as the basis for his section 1983 claim is without merit. While the petitioner summarily complained that he was deprived of "rights, privileges and immunities secured by the federal Constitution and laws, including, without limitation, the provisions of the Fifth and Fourteenth Amendments," the petitioner nowhere identified the substance of the al-

leged deprivations. Such conclusory statements were insufficient to state a claim under section 1983. *See Ana Leon T.*, 823 F.2d at 930.

Accordingly, the district court properly dismissed the petitioner's section 1983 claim.

### III.

In challenging the district court's dismissal of his habeas petition, the petitioner argues that the state's purported failure to provide mental treatment implicated due process interests attendant to the enforcement of plea agreements. As to his ineffective assistance of counsel claim, the petitioner contends that he presented substantial evidence that his trial counsel's conduct fell far short of the standard of care.

■ In reviewing a habeas proceeding, factual findings by the district court are subject to a clearly erroneous standard of review. *Warner v. United States*, 975 F.2d 1207, 1212 (6th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1314, 122 L.Ed.2d 702 (1993). Moreover, we must give "complete deference to evidence-supported state court findings of fact." *Lundy v. Campbell*, 888 F.2d 467, 469 (6th Cir.1989), *cert. denied*, 495 U.S. 950, 110 S.Ct. 2212, 109 L.Ed.2d 538 (1990).

■ Similarly, when a section 2254 petition presents a mixed question of fact and law, factual findings by the state court that are supported by the record are entitled to complete deference, just as with any factual question. *Sumner v. Mata*, 455 U.S. 591, 597, 102 S.Ct. 1303, 1306–07, 71 L.Ed.2d 480 (1982). However, the federal court must apply the appropriate legal standard to the facts *de novo*. *Id. See also Sims v. Livesay*, 970 F.2d 1575, 1579 (6th Cir.1992).

### A.

In *Santobello*, 404 U.S. 257, 92 S.Ct. 495, the Supreme Court recognized that the prosecution's breach of a plea agreement had constitutional implications. *Id.* at 262, 92 S.Ct. at 499. The Court rather vaguely identified the interest at stake as "the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty." *Id.* at 262, 92 S.Ct. at 499. The Court later clarified this constitutional interest, finding that "only when it develops that the defendant was not fairly apprised of its consequences can his plea be challenged under the Due Process Clause." *Mabry v. Johnson*, 467 U.S. 504, 509, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984). If the petitioner "was fully aware of the likely consequences when he pleaded guilty[,] it is not unfair to expect him to live with those consequences now." *Id.* at 511, 104 S.Ct. at 2548.

■ While we have recognized that a habeas petitioner can state a claim under section 2254 by alleging that the prosecution breached a plea agreement, *see Dixon v. Alexander*, 741 F.2d 121, 123 (6th Cir.1984), the petitioner here has made no such claim. Instead, he alleged that prison officials, not the prosecution, breached the plea agreement. Indeed, it is clear that the prosecution fully performed its only promise under the plea agreement by moving to dismiss the two sodomy charges. Accordingly, the fairness interests identified in *Santobello* are not implicated, and no constitutional claim has been stated.

■ Moreover, the state court found that prison officials breached no duty to the petitioner, a finding fully supported by the record. The petitioner admitted that he received both inpatient and outpatient psychiatric treatment during his imprisonment. His prison medical records confirmed that he received psychiatric treatment, including medication, until the staff psychiatrist determined that no further treatment was required. The petitioner denied none of this. Instead, he complained that he did not receive the form of psychiatric care he and his personal physician desired. Given that the statute provides only that the state shall provide "treatment," not "the treatment of choice," we must defer to the state court's finding that prison officials did not breach any duty to the petitioner. *See Lundy*, 888 F.2d at 469. Accordingly, the district court properly dismissed the petitioner's claim.

828

## B.

■ In order to state a claim for ineffective assistance of counsel, a criminal defendant has a two-fold burden to meet:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The defendant's burden in the case of a guilty plea is the same, except that, to prove the second component, the defendant must demonstrate that he would have reached a different decision to plead. *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

■ In determining whether counsel made serious errors, the standard to which an attorney is held is not that of the most astute counsel, but rather that of "reasonably effective assistance." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. In this regard, the court will "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065.

■ Thus, trial counsel's tactical decisions are particularly difficult to attack. A defendant attacking his lawyer's performance "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (citation omitted). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable...." *Id.* at 690, 104 S.Ct. at 2066. However, a failure to investigate, especially as to key evidence, must be supported by a reasoned and deliberate determination that investigation was not warranted. As the *Strickland* Court opined,

[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

*Id.* at 690–91, 104 S.Ct. at 2066. *See also Sims,* 970 F.2d at 1580.

■ Here, the state court concluded, following a two-day evidentiary hearing, that the petitioner had not been denied effective assistance of counsel. The record is replete with evidence to support this conclusion. As an initial matter, the petitioner's trial counsel had been a criminal defense lawyer for ten years at the time he represented the petitioner, and had represented criminal defendants in more than 100 jury trials, many of them involving rape charges.

Moreover, the record does not support any of the specific shortcomings identified by the petitioner, including a failure to investigate. While the petitioner claimed that trial counsel failed to pursue alibi witnesses, both the attorney and the petitioner's father specifically recalled that the attorney's staff member fully interviewed all witnesses identified by the petitioner. The petitioner also claimed that trial counsel failed to disclose the date of one of the charged rapes, so that the petitioner did not know that he had an alibi for that charge. However, the date of both rapes and the names of the victims were clearly identified in the indictments, which the petitioner acknowledged receiving prior to pleading. In fact, the record evidence, including the petitioner's own testimony, refutes the petitioner's contention that he had an alibi. In addition, neither the petitioner's testimony nor that of his father support the petitioner's claim that trial counsel failed to keep the petitioner fully advised. The petitioner testified that he talked with his attorney on some fifteen different occasions between the time of his arrest and plea, and the petitioner's father spoke with trial counsel ten to twenty times during the same period. Thus, the petitioner identified no deficiency

in counsel's performance that finds any support in the record.

Moreover, the record is devoid of evidence that the result would have been different had the petitioner been represented by other counsel. The petitioner's father testified that he, not trial counsel, was the primary impetus behind the petitioner's decision to plead guilty but mentally ill. Accordingly, the petitioner satisfied neither prong of the *Strickland* test, and the district court properly dismissed the petition.

### IV.

For the aforesaid reasons, we **AFFIRM** the district court's orders.