66 F.3d 327
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Armeka SHORT, Defendant-Appellant.
 No. 94-1579.
 United States Court of Appeals, Sixth Circuit.
 Sept. 7, 1995.
 
 Before: JONES, GUY, and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Armeka Short appeals her conviction on various drug and firearms charges. Short claims that her conviction should be reversed because she did not have effective assistance of counsel. For the reasons set out below, we affirm.
 
 
 2
 * Federal agents arrested Armeka Short on June 29, 1993, during a transaction involving the purchase of six ounces of cocaine. The FBI organized the transaction through Andre Broadnax, a cooperating individual. Broadnax arranged the cocaine deal with Paul Jordan and Jordan's unknown supplier.
 
 
 3
 Broadnax arranged the meeting for June 29, 1993. On that date, Paul Jordan arrived in a car with Short in the passenger seat. After Jordan completed a telephone call on a nearby pay phone, agents moved in and arrested him. Agents also ordered Short out of the car. Agents saw the butt of a semi-automatic pistol hanging out of Short's purse. After Short got out of the car, agents discovered and seized a brown paper bag containing six ounces of cocaine on the floor of the front seat of the car. An obliterated serial number prevented agents from tracing the pistol.
 
 
 4
 In setting up the deal with Jordan and Short, Broadnax had made several phone calls, which the FBI monitored. Many of these calls were to a telephone number assigned to an apartment leased by Short's mother. The FBI also taped phone conversations between Short and Jordan. The government introduced five of these conversations at trial. An expert testified that these calls involved attempts to collect drug debts and plans to buy and sell cocaine in the future.
 
 
 5
 In one phone conversation, Short and Jordan discussed the fact that a price of "twenty-five six" ($25,600) was too high and that "everybody else" wanted "twenty-four or twenty-three." In another call, Jordan and Short discussed the fact that half the kilos were "bad" and had to be sent back. In another call, they discussed the use of a middle man in a drug deal.
 
 
 6
 A grand jury returned a multi-count indictment against Armeka Short and other co-defendants on September 1, 1993. Count one charged Short with conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. Secs. 846 and 841(a)(1); counts five through nine charged Short with unlawful use of a telephone, in violation of 21 U.S.C. Sec. 843(b); count ten charged Short with possession of cocaine with intent to distribute, in violation of 21 U.S.C. Sec. 841(a)(1); count eleven charged Short with possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. Sec. 922(k); and count twelve charged Short with using and carrying a firearm during a drug trafficking offense, in violation of 18 U.S.C. Sec. 924(c).
 
 
 7
 Short testified at trial, maintaining that she had no involvement in Jordan's cocaine trafficking. She claimed that she gave Jordan some of her jewelry to sell and that this jewelry was the subject of her telephone conversations with Jordan. She denied knowing the price of cocaine, or knowing the meaning of "taking the bad ones [kilos] back." The jury found Short guilty on counts one, five through ten, and twelve. On May 5, 1994, the district court sentenced Short to fifteen years in prison.
 
 II
 
 8
 The sole issue pressed by Short is a claim that her counsel was ineffective during trial for failing to withdraw and then present himself and his partner as witnesses. Short states the issue two ways. First, that the court committed plain error in failing to note the conflict and then disqualify counsel. Second, Short claims that the failure of counsel to withdraw deprived her of her Sixth Amendment right to effective assistance of counsel.
 
 
 9
 The gravamen of Short's claim is that after Jordan made bail, he visited the law offices of Raymond Burkette (Short's trial attorney) and Arlene Woods, Burkette's partner. Burkette asked Jordan what he told the FBI. Jordan told Burkette he informed the FBI about his own involvement in the crime. Short maintains that Jordan also told Burkette and Woods that Short had "done nothing wrong," and that Short was the "victim" of Jordan's own drug activity.
 
 
 10
 To establish ineffective assistance of counsel, Short must show that counsel's performance was deficient and that the deficient performance prejudiced the defense, rendering the trial unfair and the result unreliable. Strickland v. Washington, 466 U.S. 668, 687 (1984); Sims v. Livesay, 970 F.2d 1575, 1579-81 (6th Cir.1992); Beam v. Foltz, 832 F.2d 1401, 1408-09 (6th Cir.1987), cert. denied, 485 U.S. 980 (1988); United States v. Cox, 826 F.2d; 1518, 1525-26 (6th Cir.1987), cert. denied, 484 U.S. 1028 (1988). The reviewing court's scrutiny of counsel's performance is highly deferential, Strickland, 466 U.S. at 689. Indeed, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690; see also O'Hara v. Wigginton, 24 F.3d 823, 828 (6th Cir.1994); United States v. Morrow, 977 F.2d 222, 229-30 (6th Cir.1992) (en banc), cert. denied, 113 S.Ct. 2969 (1993). The court must not indulge in hindsight, but must evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors. Strickland, 466 U.S. at 690; Cobb v. Perini, 832 F.2d 342, 347 (6th Cir.1987), cert. denied, 486 U.S. 1024 (1988); Blackburn, 828 F.2d at 1180-81.
 
 
 11
 Trial counsel's tactical decisions are particularly difficult to attack, O'Hara, 24 F.3d at 828, and a defendant's challenge to such decisions must overcome a presumption that the challenged action might be considered sound trial strategy. Ibid. (quoting Strickland, 466 U.S. at 689). Nonetheless, the court must make an independent judicial evaluation of counsel's performance without being swayed by the defendant's possible acquiescence in counsel's performance at trial, Ward v. United States, 995 F.2d 1317, 1322 (6th Cir.1993), and also must ensure that counsel acted reasonably under all the circumstances. Sims, 970 F.2d at 1580-81.
 
 
 12
 To satisfy the prejudice prong of the Strickland test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; see Sims, 970 F.2d at 1581; Cox, 826 F.2d at 1525-26. "The essential question is whether better lawyering would have produced a different result." Ward, 995 F.2d at 1321; see also United States v. Sanchez, 960 F.2d 610, 612 (6th Cir.1992) (per curiam).
 
 
 13
 Notwithstanding the emphasis in Strickland on whether any error might have affected the outcome, the Court in Lockhart v. Fretwell, 113 S.Ct. 838 (1993), emphasized that "an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective. To set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." Id. at 842-43. Hence, the Lockhart decision instructs the reviewing courts to focus on whether counsel's errors have likely undermined the reliability of and confidence in the result, i.e., can one confidently say that the trial or proceeding has reached a fair and just result. Id.; see also Nix v. Whiteside, 475 U.S. 157, 175 (1986); United States v. Cronic, 466 U.S. 648, 658 (1984); Workman, 957 F.2d at 1346. On balance, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686.
 
 
 14
 Traditionally, the only avenue for a defendant to raise the issue of ineffective assistance of counsel was through a collateral attack on the conviction under 28 U.S.C. Sec. 2255. United States v. Goodlett, 3 F.3d 976, 980 (6th Cir.1993). This rule allows all parties to develop the factual record fully. However, if parties have adequately developed the record, the court can elect to hear the issue on direct appeal. Ibid.
 
 
 15
 We can review this claim on direct appeal because, even assuming that each of Short's accusations is true and drawing all inferences in her favor, Short is simply unable to demonstrate any prejudice from her counsel's purported failure to disqualify himself and testify. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of a lack of sufficient prejudice ... that course should be followed." Strickland, 466 U.S. at 697. The evidence against Short was ample and the weakness in Jordan's testimony were adequately, and even shrewdly, probed by Short's attorney.
 
 
 16
 The most significant evidence against Short was the fact that the FBI arrested her in a car with a bag of cocaine on the floor, and a loaded semi-automatic pistol in her purse. Probably of equal importance was the expert testimony about the audio tapes of Short and Jordan discussing drug transactions and the fact that Broadnax had made a series of phone calls to a number that Short used. The jury apparently found Short's trial testimony about the phone conversations to be less than credible, an understandable conclusion considering her evasive answers.
 
 
 17
 Jordan, the witness at the center of this claim, was subject to a vigorous and searching cross-examination. At least one witness, his ex-girlfriend, buttressed the attacks on his veracity by testifying to his untruthfulness. Similarly, and shrewdly, Burkette asked a series of questions that made it quite clear to a listener that both he and his partner had spoken to Jordan and that he believed Jordan had exculpated Short. The value of doing so is apparent. The attorney was of course not under oath (though we presume he had a good faith belief in the basis of the question), and, more importantly, was not subject to any cross-examination. Furthermore, there was no legal or ethical bar to calling Arlene Woods, Burkette's partner, to the stand, but doing so would have exposed her to cross-examination. We are not prepared to say that Short was prejudiced by the presentation of favorable information to the jury, in the best light possible, without the risk of cross-examination.
 
 
 18
 Finally, assuming there could have been some benefit to having had the attorney testify on the stand, Jordan's answers to counsel's questions were sufficiently useful to make any additional benefit de minimis. With the exception of one comment, that Short was a "victim," Jordan never denied making the statements attributed to him by Short's counsel. Instead, he merely claimed not to recall. Other than repeating as fact what he had just stated in the form of a question, but this time on the witness stand, the counsel's testimony could have made no greater impact, particularly in the face of the overwhelming evidence produced by the government.
 
 
 19
 Therefore, Short cannot even demonstrate a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; accord Sims, 970 F.2d at 1581; Cox, 826 F.2d at 1525-26. She certainly cannot show that the "result of the proceeding was fundamentally unfair or unreliable." Lockhart, 113 S.Ct. at 842-43.
 
 III
 
 20
 The judgment of conviction is AFFIRMED.