**Mary Jane HARTSFIELD, Plaintiff,**

v.

**UNITED TECHNOLOGIES OTIS ELEVATOR CO., INC., a New Jersey Corporation a/k/a Otis Elevator, a New Jersey Corporation, Defendant.**

**No. CIV.A. 96–40115.**

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 12, 1997.

Leonard E. Miller, Frank R. Langton Assoc., Sterling Heights, MI, for Mary Jane Hartsfield.

Thomas G. Cardelli, Cardelli, Herbert, Royal Oak, MI, for United Technologies Otis Elevator Co., Inc.

Thomas L. Fleury, Detroit, MI, for Grace Hosp.

### MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO QUASH AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Trial in this matter was scheduled to commence on November 24, 1997. However, on November 24, 1997, in lieu of trial, this court conducted a hearing on two motions recently filed by defendant United Technologies Otis Elevator Co., Inc. ("Otis Elevator"), to wit: Otis Elevator's motion to quash the subpoena directed to John Mosella, and Otis Elevator's motion to dismiss.[1]  For the following reasons, upon a review of the parties' written submissions, the record, the arguments advanced at the hearing, and all the relevant authorities, Otis Elevator's motion to quash the subpoena directed to John Mosella will be denied, and Otis Elevator's motion for summary judgment will be granted.

### FACTS

This action arises out of an incident which occurred on March 22, 1995, at approximately 11:30 p.m.  Plaintiff, Mary Jane Hartsfield, was employed as a respiratory technician at Grace Hospital in Detroit, Michigan at that time.  She had been employed in that capacity for seventeen years, and continues to be employed as a respiratory technician at Grace Hospital today.

Plaintiff's duties as a respiratory therapist involve, *inter alia*, administering breathing treatments, conducting chest physical therapy, and responding to trauma.  In order to perform some of these tasks, she totes a cart ("the cart") containing medical equipment (i.e., pulse oximetry machine, nebulizer, aqua pack, flow meters) and medication.

On the date of the incident, plaintiff began work from an office located on the fourth floor of the hospital.  Shortly after commencing her shift, plaintiff pushed the cart from her office on the fourth floor to the elevator on that floor ("4–West elevator"). She then entered the 4–West elevator with her cart in order to travel to the fifth floor of the hospital.  On the date in question, the elevator was under the control of defendant Otis Elevator.

Plaintiff alleges that when the elevator arrived at the fifth floor, the elevator dropped approximately six inches and the elevator

---

1.  Defendant's "motion to dismiss" is actually a    motion for summary judgment.

door stuck. Plaintiff claims that she pressed the "open door" button for a few seconds, but the doors did not open.

Eventually, so plaintiff asserts, the doors opened two inches wide. Then, according to plaintiff, a male walked by and assisted plaintiff in prying the doors completely open with his hands.

Upon opening the doors all the way, plaintiff exited the elevator. She alleges that she had to "step up" to get herself out of the elevator due to the approximate six-inch drop in the floor of the elevator. Plaintiff asserts that the next thing she did while the elevator was still six inches below the floor was reach into the elevator for the cart. She testified at her deposition that she was close enough to the cart that she could touch it without stepping back into the elevator. Plaintiff alleges that as she attempted to remove the cart from the elevator, she injured herself.

Plaintiff filed the instant case on February 21, 1996 against defendant Otis Elevator. She claims that defendant was negligent in designing, installing and maintaining the elevator. She also alleges that defendant negligently failed to warn users of the elevator's dangerous condition.

In an opinion and order dated April 14, 1997, this court dismissed all of plaintiff's claims, save one, i.e. her claim of negligent maintenance. Presently, defendant is before this court urging dismissal of that claim. Defendant is also requesting that this court quash a subpoena directed to its expert, John Mosella. This court will address the latter issue first.

## MOTION TO QUASH SUBPOENA DIRECTED TO JOHN MOSELLA

Otis Elevator asks this court to quash the subpoena plaintiff served on Otis Elevator's expert witness, John Mosella. For the reasons stated on the record in open court on November 24, 1997, this court will not quash said subpoena. Otis Elevator has been unable to articulate so much as one reason why the subpoena prejudices it. In fact, Otis Elevator admits that it is aware of all the matters upon which plaintiff proposes to call Mr. Mosella to testify.

## MOTION FOR SUMMARY JUDGMENT

Otis Elevator urges this court to dismiss plaintiff's claim of negligent maintenance, the only claim remaining in this lawsuit, because plaintiff can offer no evidence which would lead a reasonable juror to conclude that defendant's negligence caused the elevator in question to mis-level. This court will construe Otis Elevator's motion to dismiss as a motion for summary judgment, and grant the same.

### Legal Standards

### Summary Judgment

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). There is no genuine issue of material fact when the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *In re Dollar Corp.*, 25 F.3d 1320, 1323 (6th Cir.1994) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986)). "The mere existence of some alleged factual dispute between the parties will not defeat the otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2509–10. In deciding a motion for summary judgment, the court must consider all evidence together with all inferences to be drawn therefrom "in light most favorable to the party opposing the motion." *Watkins v.*

*Northwestern Ohio Tractor Pullers Ass'n., Inc.,* 630 F.2d 1155, 1158 (6th Cir.1980).

If the movant meets the standard specified at Rule 56(c), then the opposing party must come forth with "specific facts showing that there is a genuine issue for trial." *First National Bank v. Cities Serv. Co.,* 391 U.S. 253, 270, 88 S.Ct. 1575, 1583, 20 L.Ed.2d 569 (1968); Fed.R.Civ.P. 56(e). The non-moving party "is not entitled to a trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Kraft v. United States,* 991 F.2d 292, 296 (6th Cir.1993), *cert. denied,* 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993); *Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 861 (6th Cir.1986). And, "if the adverse party does not respond, summary judgment, if appropriate, shall be entered against the adverse party ." Fed.R.Civ.P. 56(e); *Rizzo v. Goode,* 423 U.S. 362, 370–71, 96 S.Ct. 598, 603–04, 46 L.Ed.2d 561 (1976); *O'Hara v. Wigginton,* 24 F.3d 823, 826–27 (6th Cir. 1994).

### Negligence

■ To make out a *prima facie* case of negligence, plaintiff must produce evidence sufficient to prove a causal connection between defendant's conduct and plaintiff's injuries. *Moning v. Alfono,* 400 Mich. 425, 437, 254 N.W.2d 759 (1977). It is well-settled under Michigan law that accidents do not equal negligence and that negligence cannot be inferred from the mere proof of an accident and consequent injury. *Daigneau v. Young,* 349 Mich. 632, 635, 85 N.W.2d 88 (1957). Rather, in every negligence case, plaintiff must show that there is a reasonable basis for concluding that it is more likely than not that conduct by the defendant was the cause of plaintiff's injuries. *Skinner v. Square D. Company,* 445 Mich. 153, 164–65, 516 N.W.2d 475 (1994). "A mere possibility of causation is not enough; and when the matter remains one of mere speculation or

conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court" to enter judgment for the defendant. *Id.* at 163, 516 N.W.2d 475. *See also Jordan v. Whiting Corp.,* 396 Mich. 145, 151, 240 N.W.2d 468 (1976) ("[t]he mere possibility that a defendant's negligence may have been the cause, either theoretical or conjectural, of an accident is not sufficient to establish a causal link between the two."); *Daigneau,* 349 Mich. at 636, 85 N.W.2d 88 (" '[t]here must be more than a mere possibility that unreasonable conduct of the defendant caused the injury.' ").

### Plaintiff Does Not Have Sufficient Evidence From Which A Reasonable Juror Could Conclude That The Elevator Mis–Leveled Due To Negligent Maintenance

■ Plaintiff will attempt to establish that the elevator at issue was negligently maintained by first calling Otis Elevator's expert, John Mosella, as a witness at trial. Mosella testified at his deposition that an elevator could mis-level either due to worn contacts on the selector ring of the elevator *or* plaintiff's pushing of the stop button. In regard to worn selector rings, Mosella stated that they would cause an elevator to constantly mis-level in increasing one-eighth increments over time until the contacts were replaced.[2] As for pushing the stop button, Mosella explained that this could also cause an elevator to mis-level since, after the stop button was engaged, the elevator would come to a halt at a position which might well not be level with the adjacent floor of the building outside the elevator shaft.[3]

In Mosella's opinion, the elevator mis-leveled due to plaintiff's pushing of the stop button. Mosella saw no evidence of negligent maintenance. All the evidence in the record reviewed by Mosella demonstrated to him that the selector contacts were not worn

---

**2.** For the elevator to mis-level six inches as plaintiff alleges, Mosella testified that if such mis-leveling resulted from worn selector rings, the mis-leveling would necessarily have occurred in increasing one-eighth increments extending over a very lengthy period of time, rather than in a sudden very substantial six-inch mis-leveling.

**3.** Mosella testified that it is common practice for hospital employees who transport carts or x-ray machines to hit the stop button on the elevator so they do not have to worry about the elevator doors closing on them as they exit or enter the same.

on the date in question and that the elevator was maintained properly.[4]

Despite Mosella's ultimate conclusion that the elevator at issue was *not* negligently maintained, plaintiff nevertheless intends to rely on Mosella's testimony to establish that the elevator *was* negligently maintained. Plaintiff argues that she will refute the expert's conclusion that the elevator mis-leveled due to her pressing of the stop button by testifying that she did not press that button. After she testifies as such, the jury, so she argues, can infer that the elevator mis-leveled due to worn selector contacts (i.e., negligent maintenance). This court disagrees with plaintiff's contention that the jury could make such an inference. Plaintiff simply does not have any evidence to support an inference that the elevator was negligently maintained. For example, there are no reports of this elevator mis-leveling at a time reasonably close to plaintiff's accident, which would demonstrate, as explained by Mr. Mosella, that the elevator was gradually and incrementally mis-leveling due to worn selector contacts. In fact, the lack of reports of any problems with this elevator tends to show that the elevator was not mis-leveling gradually and constantly over time. If this particular elevator were mis-leveling constantly and increasingly over time, Otis Elevator presumably would have been notified by Grace Hospital or otherwise.[5] Furthermore, not only is there a lack of evidence supporting an inference that Otis Elevator was negligent in performing routine maintenance on the elevator (i.e., replacing worn selector contacts), there is uncontroverted evidence that Otis Elevator was not negligent in maintaining the elevators. Larry Scheuher, a maintenance examiner for Otis Elevator, testified at his deposition that he checked and adjusted the elevators at Grace Hospital every week, including the week of

and prior to the accident.[6] Scheuher testified that he would work hard to ensure that floor levels were within 5/8 of an inch tolerance. Scheuher further testified that he cannot recall any problems with mis-leveling of the elevator at issue between January 1 and March 22, 1995.

In short, construing all the evidence in a light most favorable to the plaintiff, the evidence is insufficient for a jury to reasonably infer that Otis Elevator negligently maintained the elevator. While plaintiff's testimony that she did not push the stop button tends to refute the expert's conclusion that she did push the stop button, plaintiff's testimony does not, as she believes, necessarily tend to show that the elevator mis-leveled *due to negligent maintenance*. Once again, as explained by Mosella, if the elevator mis-leveled due to negligent maintenance there would have had to be a steady and increasing mis-leveling of that elevator over time, but plaintiff has no evidence which tends to show this. Indeed, all the evidence indicates that the alleged six-inch mis-leveling of the elevator was a sudden, isolated incident. If it were not negligent maintenance or plaintiff's pressing of the stop button that caused the elevator to mis-level, perhaps it was a malfunction of the elevator which caused it to mis-level. Yet, in the event it was a malfunction which caused the mis-leveling, there is no evidence indicating that a malfunction would occur as a result of negligent maintenance.

If this case were to go to the jury, the jury would be left to conjecture, impermissibly, as to what caused the elevator to mis-level. Plaintiff's theory of causation does not seem more likely than any other theory. It is for this reason that this court is compelled to enter judgment for the defendant.

4. There are no records of worn selector rings being replaced in this elevator. Yet, Mosella opined that replacing worn selector contacts is part of the general maintenance of the elevator and would therefore not be written up in the records.

5. Plaintiff points out that there are witnesses who will testify that the elevators at Grace Hospital mis-leveled *all the time* (e.g., Jeanette

McClain). Such testimony, however, does not show that *the elevator at issue* was mis-leveling constantly and incrementally *during the time of the accident*.

6. The Certificates of Examination for the weeks ending March 16 and March 23, 1995 confirm that all elevators at Grace Hospital were checked by Otis Elevator during those weeks.

### ORDER

**IT IS HEREBY ORDERED** that defendant's motion to quash the subpoena directed to John Mosella is DENIED.

**IT IS HEREBY ORDERED** that defendant's motion to dismiss, which is construed as a motion for summary judgment, is GRANTED.

**SO ORDERED.**

### JUDGMENT

This action came before the court, Honorable Paul V. Gadola, District Judge, presiding, and the issues having been duly reviewed and a decision having been duly rendered.

**IT IS ORDERED AND ADJUDGED** that judgment be entered for the defendant UNITED TECHNOLOGIES OTIS ELEVATOR CO., INC., and that the action be dismissed.

It is further **ORDERED** that the clerk serve a copy of the judgment by United States mail on the counsel for plaintiff and on counsel for defendant.