**Warren W. DAVID, Plaintiff/Counter–Defendant,**

**ANA TELEVISION NETWORK, INC. and ANA Radio Network, Inc., Defendants/Counter–Plaintiffs,**

No. 96–40129.

United States District Court, E.D. Michigan, Southern Division.

March 5, 1998.

Edward L. Rogers, Rogers & More, Washington, DC, for ANA Television Network, Inc. and ANA Radio Network, Inc.

Kathleen L. Bogas, Sachs, Waldman, Detroit, MI, for Warren W. David.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' COUNTERCLAIM

GADOLA, District Judge.

Presently before this court is a motion by plaintiff, Warren W. David, for summary judgment on the Counterclaim filed by defendants ANA Television Network, Inc. and ANA Radio Network, Inc. (collectively "ANA"). For the following reasons, plaintiff's motion will be granted.

### FACTUAL BACKGROUND

In 1994, ANA employed plaintiff as Director of Marketing and Sales. On April 27, 1995, the parties entered into a formal employment contract ("Employment Agreement") pursuant to which defendants hired plaintiff for an 18 month period, effective retroactively to June 6, 1994. The Employment Agreement set plaintiff's base annual salary at $50,000, plus commissions. The Employment Agreement further provided that plaintiff was an "at will" employee who could be terminated "upon four weeks written notice."

In the fall of 1995, Dr. Abdullah Masry, the President of ANA, Mohamed Hakki, at the time ANA's CEO, and Mr. Badr Abu-Ghosh, ANA's then-legal advisor, decided to terminate plaintiff's employment. By letter dated September 25, 1995 ("Hakki Letter"), defendants offered to

pay you [plaintiff] the annual salary remaining due under Section 2 of the [Employment] Agreement through its December 6, 1995 expiration date, (plus any commissions remaining due under Section 2 of the [Employment] Agreement,) in exchange for your [plaintiff's] tendering your [plaintiff's] resignation from the Companies [defendants] and your [plaintiff's] agreement to release the Companies [defendants] ... from any claims you

[plaintiff] may assert against them [defendants].

The Hakki Letter further provided:

We believe it is both in your [plaintiff] and the Companies' [defendants'] interests to resolve this matter as quickly as possible. Please sign below to acknowledge your [plaintiff's] agreement to the above terms. we [sic] note that this letter is for settlement purposes only, and shall not constitute either an admission or a waiver of any of the parties' rights or defenses, or any claims that any party might assert in this or any other matter or proceeding.

Plaintiff refused to sign the Hakki Letter and Cheryl Montalvo, the individual who delivered the letter to plaintiff, informed Hakki that plaintiff had so refused.

Although plaintiff refused to sign the Hakki Letter, he nevertheless continued to received a bi-weekly check from defendants in an amount equivalent to his base salary until the termination date of the Employment Agreement, December 6, 1995. On December 15, 1995, plaintiff's attorney, Kathleen L. Bogas, sent a letter to defendants' attorney wherein she: (1) insisted that plaintiff was still owed commissions pursuant to the Employment Agreement, (2) threatened to sue defendants for a number of causes of action, including, but not limited to, a violation of the Whistle-blowers' Protection Act, and (3) communicated plaintiff's offer to settle the matter for one hundred and twenty-five thousand dollars ($125,000).[1]

Defendants responded to the December 15, 1995 letter from plaintiff's counsel via a letter dated December 28, 1995. Plaintiff was invited to present an invoice to defendants reflecting the commissions he believed he was due and defendants promised, after receiving such an invoice, to promptly pay the commissions they found due. In regard to the payments made to plaintiff equivalent to his base salary for the remainder of the contract term, the December 28, 1995 letter stated as follows:

Nonetheless, purely as a matter of good will, and without waiving its position that Mr. David's employment had been terminated for cause in September, 1995, ANA voluntarily provided Mr. David with severance payments, in the amount of his prior base salary, to assist Mr. David while he sought other employment.

In a letter dated January 18, 1995 to defendants' counsel, plaintiff's counsel set forth the commissions plaintiff believed he was due through August 31, 1995. In order to help plaintiff determine the amount of commissions he was owed in the months following August, 1995, plaintiff's attorney requested month end revenue reports. To date, the commissions to which plaintiff believes he is entitled have not been paid.

### Procedural History

On or about December 26, 1995, plaintiff filed a Complaint and Jury Demand in Wayne County Circuit Court against defendants alleging retaliatory discharge, breach of contract, and violations of the Whistleblower's Protection Act, M.C.L.A. § 15.361, and the Elliott–Larsen Civil Rights Act, M.C.L.A. § 37.2101 et seq. The Complaint and Jury Demand were never served on defendants, presumably because the parties were engaged in on-going settlement discussions.[2]

After a breakdown in settlement negotiations, plaintiff filed a First Amended Complaint and Jury Demand against defendants alleging retaliatory discharge, breach of contract, and violations of the Whistle-blowers' Protection Act and the Elliot–Larsen Civil Rights Act. The First Amended Complaint was served on defendants on or about March 12 and 13, 1996. Shortly after being served with the First Amended Complaint, defendants removed the action to this court and also filed an Answer and Counterclaim.

### ANALYSIS

Currently before this court is plaintiff's motion pursuant to Federal Rule of Civil

---

1. Eleven days after sending this letter, plaintiff's attorney filed a Complaint against defendants but did not serve the same on the defendants.

2. Plaintiff's attorney believed that if the Whistleblowers' Protection Act claim was not filed by December 15, 1995, there would be a statute of limitations problem.

Procedure 56(c) for summary judgment on defendants' Counterclaim. Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). There is no genuine issue of material fact when the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *In re Dollar Corp.*, 25 F.3d 1320, 1323 (6th Cir.1994) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "The mere existence of some alleged factual dispute between the parties will not defeat the otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48. In deciding a motion for summary judgment, the court must consider all evidence together with all inferences to be drawn therefrom "in light most favorable to the party opposing the motion." *Watkins v. Northwestern Ohio Tractor Pullers Ass'n, Inc.*, 630 F.2d 1155, 1158 (6th Cir.1980).

If the movant meets the standard specified at Rule 56(c), then the opposing party must come forth with "specific facts showing that there is a genuine issue for trial." *First National Bank v. Cities Serv. Co.*, 391 U.S. 253, 270, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); Fed.R.Civ.P. 56(e). The non-moving party "is not entitled to a trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Kraft v. United States*, 991 F.2d 292, 296 (6th Cir.1993), *cert. denied*, 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993); *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). And, "if the adverse party does not respond, summary judgment, if

appropriate shall be entered against the adverse party." Fed.R.Civ.P. 56(e); *Rizzo v. Goode*, 423 U.S. 362, 370–71, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *O'Hara v. Wigginton*, 24 F.3d 823, 826–27 (6th Cir.1994).

### *Plaintiff Is Entitled to Summary Judgment on Defendants' Counterclaim*

■ In their Counterclaim, defendants allege the following:

1. By virtue of the letter dated September 25, 1995 [Hakki Letter], defendants offered plaintiff an agreement whereby[,] in exchange for defendants' agreement to pay his annual salary due for September 25, 1995 through December 6, 1995 (plus any commissions due under the contract), plaintiff would agree to resign his employment and fully release defendants from all claims.

2. Plaintiff accepted the terms of this offer by accepting a check from defendants after September 25 for payment in an amount equivalent to a portion of his annual salary. Plaintiff continued to accept such checks for payments in amounts equivalent to his salary for the remainder of September through December 6, 1995, and by cashing such checks for payments equivalent to his annual salary through November 1995.

3. The terms of the September 25, 1995 letter, which plaintiff accepted, constitutes [sic] a binding enforceable contract.

4. Plaintiff breached this contract by filing the current action in violation of his release of defendants from all claims.

5. As a result of this breach, defendants have been damaged in an amount to be proved at trial, plus its [sic] costs and attorneys fees.

Plaintiff has moved for summary judgment on defendants' Counterclaim. Plaintiff argues that the undisputed facts show the contract upon which defendants base their Counterclaim never was formed.

■ It is a principal tenet of contract law that there is no contract unless there is mutual assent to be bound. *Barber v. S.M.H. (U.S.), Inc.*, 202 Mich.App. 366, 509 N.W.2d 791, *app. denied*, 445 Mich. 911, 519

N.W.2d 891 (1994). The express assent of all parties involved is required to form a contract and although there may be an offer, an acceptance is not valid unless it is unambiguous and in strict conformance with the offer. *Independence Township v. Reliance Building Co.,* 175 Mich.App. 48, 53, 437 N.W.2d 22 (1989). As a general rule, assent to an offer may be indicated by acts as well as words. *Pakideh v. Franklin Commercial Mortgage Group, Inc.,* 213 Mich.App. 636, 540 N.W.2d 777 (1995).

In this case, the settlement offer which defendants allege ripened into a valid agreement is expressed in the Hakki Letter as follows:

> In order to amicably resolve this matter, however, the Companies [defendants] are willing to offer the following resolution in compliance with the terms of your May 27, 1995 Employment Agreement with the Companies [defendants]. The Companies [defendants] offer to pay you [plaintiff] the annual salary remaining due under Section 2 of the Agreement through its December 6, 1995 expiration date, (plus any commissions remaining due under Section 2 of the Agreement,) in exchange for your [plaintiff's] tendering your [plaintiff's] resignation from the Companies [defendants] and your [plaintiff's] agreement to release the Companies [defendants] ... from any claims you [plaintiff] may assert against them.
>
> \*   \*   \*   \*   \*   \*
>
> We believe it is both in your [plaintiff] and the Companies' [defendants'] interests to resolve this matter as quickly as possible. Please sign below to acknowledge your [plaintiff's] agreement to the above terms. we [sic] note that this letter is for settlement purposes only, and shall not constitute either an admission or a waiver of any of the parties' rights or defenses, or any claims that any party might assert in this or any other matter or proceeding.

**3.** Ms. Montalvo was Vice–President of Finance and Administration.

**4.** A term of the settlement agreement was that defendants would pay plaintiff the commissions due him. To date, no commissions have been

Plaintiff claims that the uncontroverted facts show he never accepted the aforementioned settlement offer. This court agrees. First, Hakki, the individual who had made the offer on behalf of the defendants, conceded at his deposition that he was informed by Cheryl Montalvo,[3] the individual who delivered the offer to the plaintiff, that the plaintiff had refused to sign the Hakki Letter. Plaintiff's signing of the letter was an express condition of plaintiff's acceptance of defendants' offer, and plaintiff's refusal to do the same exhibited his explicit rejection of the offer. There being no assent by plaintiff to defendants' September 25, 1995 offer to settle the matter, it follows that no binding settlement agreement ever came into effect. Other evidence which shows plaintiff's rejection of the September 25, 1995 letter is plaintiff's counter-offer of December 15, 1995. Certainly if plaintiff had agreed to settle the matter by accepting the September 25, 1995 offer by defendants, he would not have provided defendants with a counter-offer of settlement at a later date.

■ Defendants argue that plaintiff accepted their September 25, 1995 offer of settlement when he accepted payments from defendants equal to his base salary for the remainder of the contract term. Essentially, defendants are arguing that the Hakki Letter combined with plaintiff's subsequent acceptance of ten weeks worth of salary payments constitutes a valid accord and satisfaction.[4]

■ Under Michigan law, an " 'accord' is an agreement between parties to give, and accept, in settlement of a claim or previous agreement, something other than that which is claimed to be due, and 'satisfaction' is the performance or execution of the new agreement." *Nationwide Mutual Ins. Co. v. Quality Builders, Inc.,* 192 Mich.App. 643, 646, 482 N.W.2d 474 (1992). Stated another way,

paid plaintiff since the parties cannot agree on the proper amount. Defendants' failure to pay plaintiff commissions also undercuts defendants' argument that a settlement agreement has been reached.

[t]he particular principle [of accord and satisfaction] relates to a situation where one party tenders an item in full satisfaction of a claim and the other party accepts the thing tendered.

*Id.* (quoting *Fuller v. Integrated Metal Technology, Inc.*, 154 Mich.App. 601, 607–08, 397 N.W.2d 846 (1986)). It is rudimentary that an accord requires the plaintiff to be aware that the defendant intends the tender of payment to effect a full settlement and satisfaction of the plaintiff's claims. *Id.* at 649, 482 N.W.2d 474.[5]

In support of their position that a valid accord and satisfaction was achieved here, defendants compare the case *sub judice* to *Parets v. Eaton Corp.*, 709 F.2d 1506 (6th Cir.1983). In *Parets*, the defendant sent plaintiff a payment of $19,810 accompanied by a cover letter and a release which plaintiff was to sign. The release indicated that the money was offered to plaintiff on the condition that plaintiff formally release defendant from any all claims he may have against them. Plaintiff cashed the check but refused to sign the release. The court found a valid accord and satisfaction in plaintiff's acceptance of the payment. The court stated:

One may not knowingly accept the benefits of an offer but silently reject the accompanying conditions and obligations. Actions speak louder than words.

*Id.*

*Parets* is distinguishable from the case at bar. In *Parets*, payments were given to plaintiff contemporaneously with a release which apprised plaintiff, in unambiguous terms, of the consequence of his acceptance of the payments. Plaintiff therefore knew (or had reason to know) that by accepting the defendant's tender, he was agreeing to release defendant from liability. In the instant case, the facts are very different. On September 25, 1995, defendants provided plaintiff with a settlement offer the terms of which were as follows: in exchange for plaintiff's resignation and release of defendants from all claims plaintiff would be paid his annual salary plus commissions for September 25, 1995 through December 6, 1995. Plaintiff outright rejected the settlement offer. After doing so, he nevertheless was paid his annual salary from September 25, 1995 through December 6, 1995. Plaintiff was never informed of the consequences of accepting such payments. There is no evidence, for example, that the checks given to plaintiff stated that they were "in full settlement" of plaintiff's claims. In fact, plaintiff was led to believe that the payments provided him after rejection of the settlement offer were gestures of "good will" and that by accepting the payments, he was not agreeing to release defendants from any claims whatsoever.[6]

Defendants also compare the instant case to *Small v. Chemlawn Corp.*, 584 F.Supp. 690 (W.D.Mich.1984). In *Small*, plaintiffs signed an agreement acknowledging receipt of a lump sum payment representing all vacation pay, severance pay and any other compensation due them from Chemlawn Corporation in consideration for plaintiffs' releasing

---

**5.** *Cf. Ortiz v. Travelers Insurance Co.*, 2 Mich.App. 548, 553, 140 N.W.2d 791 (1966) (recognizing a cause of action for breach of an accord since an accord is as much a binding contract as any other agreement).

**6.** In a letter to plaintiff's counsel dated December 28, 1995, defense counsel stated as follows:

Nonetheless, purely as a matter of good will, and without waiving its position that Mr. David's employment had been terminated for cause in September, 1995, ANA voluntarily provided Mr. David with severance payments, in the amount of his prior base salary, to assist Mr. David while he sought other employment. Defense counsel argued at the hearing that the aforementioned language was an attempt to refute any claim by plaintiff that the Employment

Agreement entitled plaintiff to all the monies he received from defendants after September 25, 1995. From September 25, 1995 through December 6, 1995, a period of approximately ten weeks, defendants provided plaintiff with a bi-weekly check in an amount equal to his base salary. It is the defendants' position that under the Employment Agreement, plaintiff was only entitled to such checks for the first four weeks following his termination.

While the letter may be an attempt by defense counsel to refute any claim by plaintiff that he was entitled to all the checks given him after he was terminated in September, 1995, the letter surely does not make it clear that the checks were given to the plaintiff *in full settlement of his claims*. The letter suggests that the checks, instead, were given to plaintiff as a "good will" gesture.

Chemlawn Corporation and its various officers from "any and all causes of action" relating to their employment and termination. Plaintiffs argued that there was no valid accord since there was no consideration to support such an agreement. Plaintiffs insisted that they were entitled to the entire sum received from defendants as accrued wages, vacation and severance pay. The court rejected plaintiffs' argument. The court determined that the plaintiffs were not entitled to severance pay and their acceptance (and refusal to re-tender) the severance pay, alone, was sufficient consideration for the formation of an accord.

*Small* is distinguishable from the case at bar in one significant respect. In *Small,* the defendant made it clear to the plaintiffs that monies representing accrued wages, vacation and severance pay were being given to plaintiffs on the condition that plaintiffs release the defendant from any and all claims. As stated *supra,* in the instant case, defendants did not inform the plaintiff that he was being given payments in exchange for his agreement to release defendants from any and all claims. Defendants never informed plaintiff of the legal consequence of his accepting their payments.

For all the aforementioned reasons, this court grants plaintiff's motion for summary judgment on defendants' Counterclaim for breach of contract. This court finds that no reasonable juror could conclude that the parties entered into a contract based on the terms of the September 25, 1995 settlement offer. Moreover, this court finds that there was no valid accord and satisfaction when plaintiff accepted payments from defendants totaling approximately three months of his salary.

### *ORDER*

**IT IS HEREBY ORDERED** that plaintiff's motion for summary judgment on defendants' counterclaim is GRANTED.

**SO ORDERED.**